THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRISTINA BALAN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>TESLA MOTORS INC.,<br><br>　　　　　　Defendant. | Case No. 2:19-cv-00067-MJP<br><br>**DEFENDANT TESLA'S MOTION TO COMPEL ARBITRATION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTE ON MOTION CALENDAR:<br>May 10, 2019 |

## I. INTRODUCTION

This is a defamation lawsuit brought by Plaintiff Cristina Balan ("Plaintiff") against her former employer, Defendant Tesla, Inc. ("Tesla" or "Defendant"), arising entirely out of Plaintiff's prior employment with Tesla.[1]

When Plaintiff began working at Tesla, she signed and returned an arbitration agreement ("Arbitration Agreement" or "Agreement") to Tesla, under which both she and her employer agreed to submit any claims arising from her employment to binding arbitration. The Arbitration Agreement complies fully with both the Federal Arbitration Act and applicable state law. Despite signing the Agreement, and previously complying with the Agreement by agreeing to arbitrate

---

[1] Plaintiff filed a Complaint against Tesla on January 15, 2019. Plaintiff served the lawsuit on Tesla on January 24, 2019. Tesla answered the Complaint on February 14, 2019, and in its Answer, expressly reserved its right to move to compel arbitration. (*See* Declaration of Matthew C. Lewis ("Lewis Decl."), ¶¶ 3–4.)

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 1

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

710927.0025/7644709.1

an initial set of claims against Tesla, Plaintiff filed this action in Court, asserting a single claim that arises entirely from her employment.

In the course of initial discussions regarding Plaintiff's lawsuit, counsel for Tesla reminded Plaintiff of the Arbitration Agreement, and requested that she comply with the Agreement, dismiss her court case, and pursue her claim in arbitration as she is bound to do by the Agreement. Plaintiff refused to submit her claim against Defendant to arbitration. Accordingly, Defendant has been forced to file this motion to compel arbitration and now requests that this Court order Plaintiff to arbitrate her claim as required by the Arbitration Agreement, and either dismiss or stay this action.

This Court should order Plaintiff to honor the arbitration agreement she signed when she commenced her employment, by which she agreed to submit to arbitration "any claim, dispute, and/or controversy" between her and Tesla "arising from, related to, or having any relationship or connection whatsoever with [her] seeking employment with, employment by, or association with [Tesla"—and order Plaintiff to arbitrate her claim before Judge James L. Warren (Ret.), who has already arbitrated a dispute between the parties under the existing arbitration agreement.

## II. **BACKGROUND**

Tesla designs, manufactures and sells electric cars, solar panels, and clean energy storage products both across the United States and internationally. (Declaration of Nicole White ("White Decl."), ¶ 2; *see also* Plaintiff's Complaint, ¶ 1 ("Tesla is . . . known worldwide for two general product types, Electrical Vehicles and clean energy products.") The Company maintains manufacturing facilities both inside and outside of California. (*Id.*)

Plaintiff worked for Tesla at two different times. First, Plaintiff worked for Tesla from August 2010 until January 2013. Plaintiff later worked for Tesla again, beginning in July 2013, and ending in April, 2014. (White Decl., ¶ 4.) Plaintiff worked directly on the design and creation of batteries used in Tesla's vehicles. (*See*, *e.g.*, Plaintiff's Complaint, ¶ 2.)

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 2

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

### A.   Plaintiff Twice Agreed to Arbitrate Any and All Disputes with Tesla, Including All Claims Arising From Her Employment.

On or about June 21, 2013, Plaintiff signed her offer letter from Tesla, including Tesla's Arbitration Agreement, in connection with her acceptance of employment for a second stint working Tesla. (White Decl., ¶ 5, and Exh. "A" thereto, p. 5.) Plaintiff (again) agreed to resolve any and all disputes with Tesla, including disputes arising from or relating to her employment, through binding arbitration. The Arbitration Agreement specifies the following:

- "[Y]ou and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration;"

- The arbitration shall be conducted by "the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes;"

- "**[Y]ou are waiving any and all rights to a jury** trial but all court remedies will be available in arbitration;"

- "[A]ll disputes between you and the Company shall be fully and finally resolved by binding arbitration that provides for adequate discovery;"

- "[A]ll disputes shall be resolved by a neutral arbitrator who shall issue a written opinion;" and

- "Tesla shall pay all arbitration fees in excess of those which would be required if the dispute was filed in a court of law."

(*See* White Decl., Exh. A, p. 5 (emphasis in original).)[2]

---

[2] Notably, Tesla enters into arbitration agreements with all employees, and multiple courts have upheld and enforced these agreements—which are substantially identical to the agreement Plaintiff challenges here. (*See Vandermeyden v. Tesla Motors, Inc.*, Case. No. RG16831835 (Super. Ct. for Cty. of Alameda, Cal., Jan. 18, 2017); *Lewis v. Tesla Motors, Inc.*, Case No. HG14742510 (Super. Ct. for Cty. of Alameda, Cal., May 26, 2015); *Hidalgo v. Tesla Motors, Inc.*, Case. No. 5:15-cv-05185-BLF (N.D. Cal., June 29, 2016); *see also* Lewis Decl., ¶ 5; and Request for Judicial Notice, Exhs. A, B, & C.)

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 3

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

The outset of her second stint of employment with Tesla in 2013 was the second time Plaintiff signed a document expressly agreeing to arbitrate any claims related to her employment. (White Decl., ¶ 5.) She had previously signed an identical arbitration agreement on August 10, 2010, when she first began working for Tesla, and she signed a re-affirmation of her arbitration agreement less than a week later, on August 16, 2010 (in which she agreed: "I understand and agree to this binding arbitration provision, and both I and the Company give up our right to trial by jury of any Claim I or the Company may have against each other."). (White Decl.. ¶¶ 6–7, Exhs. B & C, respectively.)

### B. Plaintiff's Claim Arises Directly from Her Former Employment With Tesla.

Plaintiff asserts a single cause of action for defamation.

As reflected in Plaintiff's Complaint, Plaintiff previously pursued claims in arbitration against Tesla regarding the end of her employment relationship with Tesla in 2014.[3] (Plaintiff's Complaint, ¶ 6.)[4] Plaintiff's claim in this lawsuit flows exclusively, by Plaintiff's own allegation, from her prior arbitration against Tesla, and thus from her employment relationship. Specifically, Plaintiff alleges in her Complaint:

> 6. Ms. Balan maintained an adversarial legal relationship with Tesla for the past 4 years, **beginning in an arbitration over a former employment relationship that ended in 2014**. While engaged in this adversarial legal relationship, the Defendant published multiple false and defamatory statements about Mrs. Balan, in an unlawful and malicious fashion.

(*Id.* (emphasis added).) Plaintiff's Complaint plainly demonstrates that the entirety of her claim in this case flows from her prior dispute with Tesla regarding the end of her employment

---

[3] Notably, Plaintiff, who was represented by counsel in her initial action against Tesla, did not challenge enforcement of the arbitration agreement in that action.

[4] Plaintiff's prior dispute with Tesla was arbitrated before JAMS, Judge James L. Warren (Ret.). Judge Warren issued a final corrected arbitration award on October 18, 2018. (Lewis Decl. ¶ 7.) Plaintiff filed a Petition to Modify and Partially Vacate the Arbitration Award with the United States District Court for the Northern District of California, which the court denied. (*Id.*)

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 4

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

relationship, and with news coverage pertaining to that dispute. (*See, e.g.*, *id.* ¶¶ 28–36.) This is particularly true in light of the fact that Plaintiff's Complaint details the ways in which she believes Tesla's statements about her to be wrong all focus entirely on actions she took or did not take during her employment with Tesla or in conjunction with the end of her employment. (*See, e.g.*, *id.* ¶¶ 39–45; 49; 53–55.)

Plaintiff's claim in this lawsuit stems entirely and exclusively from her employment with Tesla. Her claim falls within the scope of the Arbitration Agreement because it "aris[es] out of or relate to" Plaintiff's employment with Tesla.

### C. Plaintiff Refuses to Arbitrate Her Claim Against Defendant.

Defendant has asserted its contractual right to binding arbitration pursuant to the Arbitration Agreement. (Lewis Decl., ¶¶ 4–6.) Counsel for Defendant reminded Plaintiff, prior to filing this motion, that Plaintiff signed an Arbitration Agreement at the outset of her employment with Tesla and requested that Plaintiff submit her claim to arbitration subject to that Agreement. Plaintiff has refused to move this case to arbitration, and has provided no support for her apparent position that the Arbitration Agreement is not enforceable. (*Id.*)[5]

### D. The Terms of the Arbitration Agreement Are Fair and Reasonable.

The Arbitration Agreement is both fair and reasonable. By its terms, it applies mutually to both Tesla and Plaintiff, alike. (*See generally* White Decl., Exh. A.) The Agreement also protects employees from excessive arbitration-related costs, and places the financial responsibility on Tesla to pay the arbitrator's fees, administrative expenses, and any part of a filing fee above the comparable fee in state or federal court. (*Id.*) In other words, an employee is responsible only for paying the same filing fee he or she would pay in court; Tesla shoulders all other arbitration costs. The Agreement also authorizes the parties to conduct discovery, file

---

[5] On March 26, 2019, counsel for Tesla contacted Plaintiff through email. Counsel attached a copy of her arbitration agreement to the email, and in the email specifically reminded Plaintiff of her agreement, requested that she agree to move the case to arbitration, and notified Plaintiff that in the event she would not agree to arbitrate her claim, that Tesla intended to file this Motion. (Lewis Decl., ¶ 5.) Plaintiff did not respond to that email, and instead filed a Motion for Sanctions with the Court. (*Id.*) Counsel for Tesla reiterated its request on April 4, 2019, but Plaintiff refused to move the case to arbitration. (*Id.*, ¶ 6.)

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 5

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

motions, and present witnesses and evidence in arbitration. (*Id.*) Furthermore, while the parties are responsible for their own attorneys' fees as in civil court, if Plaintiff were to prevail on any claim that authorizes recovery of attorneys' fees or litigation costs, she would be entitled to recover the same remedy as if she had filed the claim in court. (*Id.*)

## III. ARGUMENT

### A. The Court Should Compel The Parties To Arbitrate Pursuant To The Controlling Contract Terms.

#### 1. The Arbitration Agreement is Governed by the Federal Arbitration Act (FAA).

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), provides that written arbitration agreements are enforceable and irrevocable. 9 U.S.C. § 2 ("[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable[.]"). The FAA establishes a national policy favoring arbitration where, as here, the parties contract for that mode of dispute resolution. 9 U.S.C. § 1, *et seq*; *AT&T Mobility v. Concepcion* ("*Concepcion*"), 563 U.S. 333, 339 (2011); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, (1985). Indeed, the United States Supreme Court interprets the FAA as creating a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (the FAA "reflects the overarching principle that arbitration is a matter of contract . . . [and that] courts must rigorously enforce arbitration agreements according to their terms . . . .") (internal citations and quotations omitted).

The FAA applies in this case. Plaintiff has on two separate occasions made the decision to sign the arbitration agreement at issue here: initially when she became an employee of Tesla in August of 2010, and again when she was rehired by Tesla in 2013. (White Decl., Exhs. A & B.) And Court precedent establishes that Tesla's multi-state operations in designing,

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 6

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

manufacturing, and selling electric cars and other clean energy products affects interstate commerce. The United States Supreme Court has held that the phrase "involving commerce" from section 2 of the FAA is the functional equivalent to "affecting commerce," which is a term of art that signals the broadest permissible exercise of Congress' commerce clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 268, 277 (1995). The Supreme Court further confirms that Congress' Commerce Clause power "may be exercised in individual cases *without showing any specific effect upon interstate commerce*" if the transaction giving rise to the arbitration agreement is part of a commercial activity that, in the aggregate, impacts interstate commerce. *Citizens Bank*, 539 U.S. at 56–7 (citations omitted) (emph. added).

Courts consistently hold that the FAA applies to employment contracts where the employer engages in business that affects interstate commerce. *See, e.g., Parrish v. Valero Retail Holdings, Inc.*, 727 F.Supp.2d 1266, 1269 (D.N.M. 2010)(holding employment contract subject to FAA where employer sold products out-of-state); *Brubaker v. Barrett*, 801 F.Supp.2d 743, 750 (E.D. Tenn. 2011)(FAA applicable to employment contract where employer "provides insurance coverage throughout North America"). Tesla plainly is involved in interstate commerce here, as it maintains manufacturing facilities in more than one state, and sells its products nationally, and around the world. (White Decl., ¶ 2.)

Further, this case involves a company that manufactures and sells automobiles. (*See*, *e.g.*, Plaintiff's Complaint, ¶ 1.) Courts have determined that cars are "instrumentalities of interstate commerce," and accordingly have held that the manufacture and sale of cars plainly involves interstate commerce thus making such activities subject to the FAA. *See, e.g., U.S. v. Oliver*, 60 F.3d 547, 550 (9th Cir. 1995)("[C]ars are themselves instrumentalities of commerce."); *U.S. v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005)("Instrumentalities of interstate commerce . . . are the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods."). Indeed, Courts in jurisdictions throughout the country "uniformly" hold that the FAA applies to arbitration agreements involving employees in the auto

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 7

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

industry, such as Plaintiff. *See, e.g., Tran v. Texan Lincoln Mercury, Inc.*, CIV. A. No. H-07-1815, 2007 WL 2471616, at *5 (S.D. Tex., Aug. 29, 2007)("[C]ourts have uniformly enforced the arbitration agreements entered into by the employees of car dealerships under the FAA.")(emphasis added); *Figueroa v. W-W Autos., Inc.*, No. 402CV201DB, 2002 WL 31992188 (N.D. Miss. Nov. 5, 2002)(FAA applied to arbitration agreement between car salesman and car dealer employer); *Sammons v. Sonic-N. Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032 (M.D. Fla. Aug. 7, 2007)(FAA applied to arbitration agreement between car mechanic and car dealer employer); *Giordano v. Pep Boys-Manny, Moe, & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360 (E.D. Pa. Mar. 29, 2001)(FAA applied to arbitration agreement between car mechanic and car parts-retailer employer).

Plaintiff was directly involved in Tesla's design, manufacture and sale of vehicles, and thus was herself directly involved in interstate commerce. Specifically, Plaintiff alleges in her Complaint: "Mrs. Balan is most recognized for her critical work on Tesla's vehicles, as memorialized by her engraved name on Tesla vehicle battery modules, where her work was heavily focused for during her work at Tesla from 2010 to 2014." (Plaintiff's Complaint, ¶ 2.)

There can be no dispute that Tesla is involved in interstate commerce by virtue of the products it manufactures and sells across state lines (or that Plaintiff was directly involved in the design and manufacture of those products), and that the FAA applies to the arbitration agreement entered into between Plaintiff and Tesla.

### 2. The FAA Provides a Strong Presumption in Favor of Enforcing Arbitration Agreements.

In the wake of the U.S. Supreme Court's seminal ruling in *Concepcion*, federal courts possess only limited discretion to disregard a valid agreement to arbitrate. *See generally Kilgore v. KeyBank, Nat'l. Ass'n*, 718 F.3d 1052, 1057–58 (9th Cir. 2013) (en banc). *Concepcion* affirmed the binding and preemptive nature of Section 2 of the Federal Arbitration Act ("FAA"), which provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 8

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

The Ninth Circuit follows *Concepcion* and consistently holds that the FAA mandates the enforceability of almost all arbitration agreements and preempts state laws purporting to invalidate arbitration agreements where—as here—the execution of the arbitration agreement is not at issue.. *See, e.g., Dean Witter Reynolds, Inc.,* 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4) (determining that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original); *see also DirecTV, Inc. v. Imburgia*, 136 S.Ct. 463, 468 (2015); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1160–61 (9th Cir. 2012); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 935 (9th Cir. 2013).  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone,* 460 U.S. at 24-25.

### 3.  Washington Recognizes a Strong Presumption in Favor of Arbitration.

Like the FAA, Washington's statutory framework governing arbitration also provides that an "[arbitration] agreement is valid, enforceable and irrevocable, except upon a ground that exists at law or in equity for revocation of contract." RCW 7.04A.060(1).  The court "*shall order the parties to arbitrate*" unless *"the court finds that there is no enforceable agreement to arbitrate[.]"* RCW 7.04A.070(2).  Like the FAA, Washington law also provides for "a strong public policy favoring arbitration of disputes." *Heights at Issaquah Ridge, Owner Ass'n v. Burton Landscape Group, Inc.,* 148 Wn. App. 400, 403–04, 200 P.3d 254 (2009). Arbitration agreements are enforced whenever possible. *Munsey v. Walla Walla College,* 80 Wn. App. 92, 95, 906 P.2d 988 (1995).   Courts are presumptively required to enforce arbitration agreements. *See Hanford Guards Union of America, Local 21 of Intern. Guards Union of America v. General Elec. Co.*, 57 Wn.2d 491, 498, 358 P.2d 307 (1961) ("It is the evaluation and conclusion of the arbitrator, and not those of the courts, that the parties have promised to abide

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 9

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

by. There is no reason why, in the face of their solemn agreement, the parties should be given an alternative of invoking time consuming and costly machinery of the courts in lieu of the relative expedience of an arbitration proceeding.").

The party opposing arbitration bears the heavy burden of showing the agreement is not enforceable. *Zuver v. Airtouch Commc'ns., Inc.*, 153 Wn.2d 293, 302, 103 P.3d 753, 759 (2004); *Satomi Owners Ass'n v. Satomi LLC,* 167 Wn.2d 781, 797, 225 P.3d 213 (2009) (applying FAA).

### B. The Parties Entered Into a Valid Arbitration Agreement.

In rare cases, the nonmoving party can avoid arbitration if she satisfies her heavy burden of showing the agreement is unconscionable. "Washington recognizes two types of unconscionability for invalidating arbitration agreements, procedural and substantive." *Romney v. Franciscan Med. Grp.*, 349 P.3d 32, 36 (Wash. Ct. App. 2015) (applying the FAA). Because neither type of unconscionability exists here, the Arbitration Agreement must be enforced.

#### 1. The Employee Arbitration Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability exists if the employee "lacked meaningful choice" when entering into the agreement. *Zuver*, 153 Wn.2d at 304.  To evaluate procedural unconscionability, courts consider: (1) the manner in which the contract was entered; (2) whether the plaintiff had a reasonable opportunity to understand the terms of the contract; and (3) whether the important terms were hidden in a maze of fine print. *See id*. The Washington Supreme Court holds that an arbitration agreement contained in an adhesion contract is not necessarily unconscionable and that the unequal bargaining power between an employer and employee does not preclude meaningful choice. *Id*. at 304–05.  Rather, the relevant inquiry is whether the employer fully disclosed the terms of the agreement and gave the employee a reasonable opportunity to consider the terms. *Id*. at 305–06.  Importantly, "an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 10

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them." *Id.* at 306–07.

Here, no procedural unconscionability exists because a review of the Agreement confirms that it is a straightforward, stand-alone document and that no key provisions are hidden in fine print. (*See generally* White Decl., Ex. A.) Plaintiff reviewed and signed the Agreement in 2010, when she was first hired by Tesla. Then, she chose to return to work for Tesla in 2013, knowing arbitration was a condition of her employment, and again signed the agreement in June 2013. Simply, there is no procedural unconscionability.

### 2. The Employee Arbitration Agreement Is Not Substantively Unconscionable.

Substantive unconscionability exists when a contractual provision is one-sided or overly harsh. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344–45, 103 P.3d 773 (2004). Terms such as "'[s]hocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused' are often used to define substantively unconscionable provisions." *Id.* (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). Substantive unconscionability does not concern "whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so 'one-sided' as to render it patently 'overly harsh.'" *Zuver*, 153 Wn.2d at 317 n.16. Plaintiff bears a heavy burden to satisfy this standard, which applies only in extreme cases.

Plaintiff cannot satisfy her burden to show substantive unconscionability. The Agreement applies mutually to the parties; both Plaintiff and Tesla are bound to its terms in arbitration. (White Decl., Exh. A, p. 5 ("[Y]ou and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration . . . .") Further, the Agreement is fair and reasonable: no provision in the Agreement is so one-sided or overly harsh as to be deemed "shocking to the conscience," "monstrously harsh," or "exceedingly calloused." Plaintiff has never raised any contention that

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 11

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

the arbitration provisions cause any fact-finding disadvantage, and the Agreement does not deprive the parties of the right and opportunity to conduct discovery pertinent to this case, file motions, or present witnesses and evidence to support their claims and defenses. (*Id.*) Likewise, Plaintiff's potential individual remedies are the same as if she pursued the matter in court. (*Id.*) On the whole, the terms of the Agreement are the type of reasonable terms found appropriate and enforceable as within the mainstream of court-approved arbitration agreements.

The Agreement also cannot be deemed substantively unconscionable based on the costs of arbitration. *See Adler*, 153 Wn.2d at 353 (party seeking to invalidate an arbitration agreement based on expense bears the burden to show excessive costs). Arbitration will not impose excessive costs on Plaintiff. Instead, Tesla will be responsible for paying the fees and costs of the arbitrator, as well as the amount of the filing fee (if any is required) that exceeds the applicable filing fee in state or federal court. (White Decl.*,* Exh. A, p. 5.) Although Plaintiff must pay for her own attorneys' fees, she will be entitled to request an award of attorneys' fees or costs from the arbitrator if she prevailed on statutory claims, in the same manner as in court. (*Id.*)

Finally, prior to this motion, Plaintiff raised no issues regarding the enforceability of this Agreement. Indeed, Plaintiff never even responded to counsel for Tesla's March 26, 2019 email reminding her of her Agreement to arbitrate, providing a copy of the Agreement, and requesting that she agree to move her case to arbitration. If Plaintiff had any concerns about the Agreement, those issues were never raised at the time with Tesla or since she has filed her complaint (and as noted previously, were not raised by counsel for Plaintiff in her initial action against Tesla, which went to arbitration pursuant to the Demand for Arbitration filed on Plaintiff's behalf by her counsel).

**C.     Plaintiff's Lawsuit Should Be Dismissed Because the Agreement Encompasses the Sole Claim Alleged in the Complaint.**

When claims in litigation are subject to an arbitration agreement, the court should compel the parties to proceed in arbitration because "[c]ontractual arbitration agreements are equally applicable to statutory claims as to other types of common law claims." *Lozano v. AT&T*

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 12

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

*Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) (Robart, J.). And if the Court can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because public policy strongly favors arbitration. *Davis v. General Dynamics Land Systems*, 152 Wn. App. 715, 718, 217 P.3d 18 (2009).

Here, Plaintiff's sole claim, for defamation, falls squarely within the scope of the Agreement and must be arbitrated because it constitutes a dispute "arising from or relating to" Plaintiff's former employment with Tesla. (White Decl., Exh. A, p. 5.) By Plaintiff's very own allegations in her Complaint, as discussed above, her claim for defamation flows entirely from her former employment with Tesla, and the arbitration she previously engaged in against Tesla resulting directly from the end of that employment. There can be no dispute that her claim here is subject to arbitration in accordance with the plain language of the parties' agreement. Because the Agreement is enforceable and applies here, the Court must enforce the parties' agreement and compel arbitration of Plaintiff's claim.

## IV. CONCLUSION

In light of the foregoing, Tesla asks that the Court dismiss this lawsuit and enforce the Agreement with respect to any surviving claim in this case and compel arbitration of her claim. Specifically, Tesla asks that the Court order Plaintiff to pursue her claim in arbitration before Judge James L. Warren (Ret.) of JAMS, as Judge Warren was previously agreed to by and between the parties, and is already familiar with both parties and the disputes that have arisen between them.

DATED: April 18, 2019

LANE POWELL PC

By     /s/ Darin M. Sands
Darin M. Sands, WSBA No. 35865
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Email: sandsd@lanepowell.com

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 13

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

Matthew C. Lewis, *Admitted Pro Hac Vice*
Rodney B. Sorensen, *Admitted Pro Hac Vice*
PAYNE & FEARS LLP
235 Pine Street, Suite 1175
San Francisco, California 94104
Telephone: 415.738.6850
Email:  mcl@paynefears.com
         rbs@paynefears.com

Attorneys for Defendant Tesla, Inc., formerly Tesla Motors, Inc.

MOTION TO COMPEL ARBITRATION
(Case No. 2:19-cv-00067-MJP) - 14

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that the following document was sent to the following CM/ECF participant:

Cristina Balan
4698 Arbors Circle
Mukilteo, WA  98275
E-Mail: cbalan.j2019@gmail.com

*Pro Se Plaintiff*

Executed on the 18th day of April, 2019, at Portland, Oregon.

/s/ Darin M. Sands
Darin M. Sands, WSBA No. 35865
601 SW Second Avenue, Suite 2100
Portland, OR  97204-3158
Telephone:  503.778.2100
E-mail:  sandsd@lanepowell.com
Attorney(s) For:  Defendant Tesla, Inc., formerly Tesla Motors, Inc.

4850-2896-6796.3

CERTIFICATE OF SERVICE
(Case No. 2:19-cv-00067-MJP)

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100  FAX: 503.778.2200

710927.0025/7644709.1