UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA BALAN,<br><br>                      Plaintiff,<br><br>     v.<br><br>TESLA MOTORS INC.,<br><br>                      Defendant. | CASE NO. C19-67 MJP<br><br>ORDER GRANTING IN PART DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION |

THIS MATTER comes before the Court on Defendant Tesla Motors Inc.'s ("Tesla's") Motion to Compel Arbitration. (Dkt. No. 17.) Having reviewed the Motion, the Response (Dkt. No. 28), the Reply (Dkt. No. 31), and all related papers, the Court GRANTS in part and DENIES in part Defendant's Motion.

**BACKGROUND**

Plaintiff Christina Balan designed and engineered batteries used in Tesla's vehicles from August 2010 until January 2013 and again from July 2013 to April 2014. (Dkt. No. 1 ("Compl.") at ¶ 3; Dkt. No. 18, Declaration of Nicole White ("White Decl.") at ¶ 4.) Prior to both stints working for Tesla, Ms. Balan signed an identical, half-page arbitration agreement (the

ORDER GRANTING IN PART DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION - 1

"Agreement") that requires "final, binding and confidential arbitration" of "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment." (Id. at ¶¶ 5-7, Ex. A at 7.) The Agreement further states: "**you are waiving any and all rights to a jury trial** but all court remedies will be available in arbitration," requires Tesla to "pay all arbitration fees in excess of those which would be required if the dispute was filed in a court of law," and requires arbitration to be conducted by Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS") under its then current rules. (Id. (emphasis in original).)

Ms. Balan claims she was "forced out" of Tesla in April 2014 for starting an internal investigation over safety concerns. (Compl. ¶ 6, Ex. A at 3-4.) She eventually brought a wrongful termination suit and the parties entered arbitration before JAMS Judge James L. Warren, who issued a final arbitration award on October 18, 2018. (Dkt. No. 19, Declaration of Matthew C. Lewis ("Lewis Decl.") at ¶ 7.)

On September 8, 2017, before the final arbitration award was issued, the Huffington Post published an article discussing, in part, Ms. Balan's attempt to communicate design flaws through an email to Tesla CEO Elon Musk. (Compl., Ex. A at 3.) The newspaper then posted Tesla's response, which described Ms. Balan's theories as "nonsensical," and asserted that not "every email sent to senior Tesla leaders (particularly emails that are not relevant to our mission or the job at hand, or are clearly suspect or misleading) warrants a response . . . ." (Id. at 4.) Tesla also accused Ms. Balan of taking it upon herself to find an alternative supplier that had no prior relevant experience and had failed a mandatory site inspection, spending company time working on a "secret project" without her manager's approval, booking an unapproved trip to

1  New York at Tesla's expense, and illegally recording conversations without permission. (Compl., Ex. A at 4-5.)

Ms. Balan now brings a single defamation claim against Tesla, seeking damages and injunctive relief. (Compl. at ¶ 88(c).) Tesla has moved to compel arbitration, arguing the Agreement is valid and encompasses Plaintiff's defamation claim. (Dkt. No. 17 at 11-15.)

**DISCUSSION**

**I.  Legal Standard**

Under the Federal Arbitration Act ("FAA"), "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The Court's role on a motion to compel is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Agreements to arbitrate may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. Zuver v. Airtouch Commc'ns, Inc., 153 Wn. 2d 293, 302 (2004).

**II.  Valid Agreement**

Ms. Balan argues that construing the Agreement to include her defamation claim is both procedurally and substantively unconscionable, rendering the Agreement invalid.[1] (Dkt. No. 28

---

[1] Tesla requests that the Court take judicial notice of three orders interpreting California law. (Dkt. No. 20 at 2.) Because Washington and California law differ significantly in ways that affect the analysis here, the Court finds those proceedings do not "have a direct relation to

at 8-12.) The Parties appear to agree that Washington law controls in this case, both relying exclusively on Federal and Washington law in their briefs. (See Dkt. No. 17 at 9-17; Dkt. No. 28 at 7 n.3.) And because the Court "sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002); see also Burnside v. Simpson Paper Co., 123 Wn. 2d 93, 100 (1994) (noting that where a party does not address choice-of-law issues, a Washington court presumptively applies Washington law); see also RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (AM. LAW INST. 1971)). The Agreement is therefore analyzed under Washington law.

"In Washington, either substantive or procedural unconscionability is sufficient to void a contract." Gandee v. LDL Freedom Enterprises, Inc., 176 Wn.2d 598, 603 (2013) (citation omitted). "The existence of an unconscionable bargain is a question of law for the courts." Zuver, 153 Wn.2d at 302-03 (quoting Nelson v. McGoldrick, 127 Wn.2d 124, 131 (1995)).

**A. Procedural Unconscionability**

To determine procedural unconscionability, the Court looks to "[t]he manner in which the contract was entered, whether [Plaintiff] had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print.'" Zuver, 153 Wn.2d at 304 (quoting Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 260 (1975)) (internal citation omitted). Plaintiff contends she lacked meaningful choice in entering the Agreement, "the key inquiry for finding procedural unconscionability," Id. at 348-49, because an average person would not understand the Agreement applies to claims made years after the employment relationship terminated. (Dkt. No. 28 at 9.) At oral argument, Plaintiff also

---

matters at issue," Huy-Ying Chen v. JPMorgan Chase Bank, No. 2:18-CV-1269-RSL, 2019 WL 2248048, at *2 (W.D. Wash. May 24, 2019) (citation omitted), and DECLINES to take judicial notice.

asserted that due to her cultural background, she believed the Agreement only meant she was waiving her right to a jury trial but could still bring claims before a judge. (Dkt. No. 39.)

While the important terms of the Agreement were not "hidden in a maze of fine print"—the Agreement is written in plain language and is limited to half a page—the Agreement's sole provision in bold: "**you are waiving any and all rights to a jury trial**," could certainly mislead an "average person" to believe they were merely waiving their right to a jury trial, not to all forms of judicial relief. (White Decl. Ex. A at 9); Zuver, 153 Wn.2d at 306-07; see also Adler v. Fred Lind Manor, 153 Wn.2d 331, 349-50 (2004). But read in conjunction with the remaining terms in the Agreement—"all disputes shall be resolved by a neutral arbitrator," "all disputes . . . shall be fully and finally resolved by binding arbitration"—and in light of the broad directive that Courts "must indulge every presumption in favor of arbitration," Zuver, 153 Wn.2d at 301 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. 1, 25 (1983)), the Court cannot find procedural unconscionability based on this clause alone.

And although Plaintiff is correct that because the Agreement is a standard form printed contract, drafted by Tesla, and presented to Plaintiff as a condition of her employment without any meaningful opportunity for her to negotiate, it is an adhesion contract, this fact "does not necessarily render it unconscionable." (Dkt. No. 28 at 9); Adler, 153 Wn.2d at 347-8 (quoting Yakima County (W.Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 393 (1993)). "[T]he mere existence of unequal bargaining power will not, standing alone, justify a finding of procedural unconscionability." Id. "At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence" of the factors supporting procedural unconscionability, such as "fraud, misrepresentation, undue influence, duress, high-pressure tactics, overreaching, fine print, or otherwise taking advantage by [Tesla]

1 of any necessity or weakness in [Plaintiff]." Zuver, 153 Wn.2d at 306-07; Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wn. App. 439, 445 (1976). Plaintiff has not met this burden.

**B. Substantive Unconscionability**

Plaintiff next argues the Agreement is substantively unconscionable if read to encompass her defamation claim because it silences Plaintiff when she has been publicly attacked by Tesla (See Dkt. No. 28 at 14; Dkt. No. 39 (oral argument)) and encompasses claims originating "an **indefinite amount of time** after the employment relationship ends" (Dkt. No. 28 at 10 (emphasis in original)). Plaintiff also contends it would be unconscionable to grant Tesla's request to unilaterally choose the arbitrator (Dkt. No. 28 at 11; Dkt. No. 17 at 2, 13).

First, the confidentiality clause in the Agreement is substantively unconscionable. "Although facially neutral, confidentiality provisions usually favor companies over individuals," Ting v. AT&T, 319 F.3d 1126, 1151 (9th Cir. 2003), and are contrary to Washington's "strong policy that justice should be administered openly and publicly." McKee v. AT & T Corp., 164 Wn. 2d 372, 398 (2008), abrogated on other grounds by AT & T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). In this case, the Agreement requires "all disputes, claims, or causes of action" to be resolved "by final, binding and confidential arbitration." (White Decl. Ex. A (emphasis added).) This broad confidentiality clause leads to the harsh, one-sided result that Tesla may publicly attack Plaintiff while she may not publicly defend herself. Adler, 153 Wn.2d at 344-45. The clause also implicates public safety concerns when applied to employees who, as alleged here, seek to notify the public that a car company is failing to adequately address design flaws. (Compl. ¶ 45; id. Ex. A at 3); McKee, 164 Wn.2d at 398 ("Secrecy conceals any patterns of illegal or abusive practices.").

While the confidentiality clause is unconscionable, it is the only unconscionable provision in the Agreement and can be severed "without disturbing the primary intent of the parties to arbitrate their disputes." Adler, 153 Wn.2d at 360. Unless an employer has engaged in an "'insidious pattern' of seeking to tip the scales in its favor in employment disputes by inserting numerous unconscionable provisions in an arbitration agreement," the Court may enforce the remainder of the contract without the unconscionable term. Id. at 359 (quoting Ingle, 328 F.3d at 1180). The Court may not assume the role of contract author rather than interpreter. Ingle, 328 F.3d at 1180.

Courts have found entire agreements unenforceable where striking multiple unconscionable clauses would leave little "left of the arbitration 'agreed' to by the parties," Gandee, 176 Wn.2d at 607, but have found that single confidentiality provisions "may be severed without substantially changing the nature of the agreement to arbitrate." Hoober v. Movement Mortg., LLC, No. C18-6001 BHS, 2019 WL 2224918, at *8 (W.D. Wash. May 23, 2019). In this case, there is a single unconscionable clause that can be stricken while leaving several important provisions of the Agreement in place: The Parties will submit to final and binding arbitration in San Francisco, have waived all rights to a jury trial, and will be subject to the JAMS rules. (White Decl. Ex. A at 9.) The Court finds the confidentiality provision severable.

Second, although Tesla seeks to apply the Agreement to Plaintiff's defamation claim years after her employment terminated, there is nothing inherently one-sided, or even unexpected about this application given the clear, broad language of the Agreement. (White Decl. Ex. A at 7 (employees agree to arbitrate "any and all disputes" "arising from or relating to your employment"); Zolezzi v. Dean Witter Reynolds, Inc., 789 F.2d 1447, 1450 (9th Cir. 1986)("[A]

1    party's obligation to arbitrate is not extinguished by his resignation from employment"); Aspero
2    v. Shearson American Exp., Inc., 768 F.2d 106, 108 (6th Cir. 1985) (same).

3    Finally, where nothing in the Agreement grants Tesla the unilateral right to choose the
4    arbitrator—in this case over Plaintiff's specific and strenuous allegations of bias—granting Tesla
5    such a power would be substantively unconscionable. See e.g., Newton v. Am. Debt Servs., Inc.,
6    854 F. Supp. 2d 712, 727 (N.D. Cal. 2012), aff'd, 549 F. App'x 692 (9th Cir. 2013) (internal
7    citations omitted) ("A single arbitrator unilaterally selected by a contracting party adverse to the
8    other is presumed to be biased."). Therefore, any part of Plaintiff's claims that are subject to
9    arbitration will not be adjudicated by the Parties' former arbitrator, James L. Warren.

**C. Applicability to This Dispute**

The Parties disagree about whether Plaintiff's defamation claim falls within the scope of the Agreement. (Dkt. No. 17 at 13; Dkt. No. 28 at 6-7.) "Because arbitration is only required where the parties have contracted for it, 'the exact content of the allegedly defamatory statement must be closely examined to see whether it extends to matters beyond the parties' contractual relationship.'" Brown v. Coleman Co., 220 F.3d 1180, 1184 (10th Cir. 2000) (quoting Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 28 (2d Cir.1995)). The Court therefore examines whether each of the allegedly defamatory statements "aris[e] from or relat[e] to [Ms. Balan's] employment, or the termination of [her] employment." (White Decl. Ex. A at 7.)

The Court finds that statements about Plaintiff seeking an alternative supplier with performance issues, writing irrelevant emails, engaging in employment-related misconduct, and resigning all "aris[e] from" or "relat[e] to" her employment or the termination of her employment, and thus fall within the scope of the Agreement. (Id. at ¶¶ 31, 33-34); Zolezzi, 789

F.2d at 1450. Although a closer question, Tesla's statement that Plaintiff was working on a "secret project" during company time is also covered by the Agreement because evaluating the statement's truth requires understanding the scope of Plaintiff's employment responsibilities and whether she received authorization for the project from her supervisor. (See Compl. at ¶ 39 (Plaintiff asserts her "project was approved by the highest level in Tesla.").)

The remaining statements accuse Plaintiff of conduct "that would not be determined with reference to the employment contract," Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1168 (8th Cir. 1984), and therefore fall outside the scope of the Agreement. Statements that Plaintiff "illegally recorded internal conversations within Tesla," and "booked an unapproved trip to New York at Tesla's expense," are accusations of criminal conduct not "arising from" or "relating to" Plaintiff's employment. (Compl. at ¶¶ 30, 32, Ex. A.); Morgan, 729 F.2d at 1168. In rebutting these statements, Plaintiff claims the recordings were not criminal, she has never been to New York, and Tesla has no proof that either activity occurred; evaluating these statements and Plaintiff's rebuttals does not require understanding even the barest details of Plaintiff's employment. (Compl. at ¶¶ 7-8, 40, 46-52.)

**CONCLUSION**

Therefore, the Court GRANTS in Part and DENIES in part Defendant's Motion to Compel Arbitration:

(1) The Parties shall arbitrate Plaintiff's defamation claim based on statements arising from or relating to her employment (Compl. at ¶¶ 30, 32, 34-36), adjudication of the remaining statements (Id. at ¶¶ 31, 33) will proceed to trial following arbitration.

(2) The confidentiality provision in the Agreement is stricken;

(3) JAMS Arbitrator James L. Warren will not arbitrate Plaintiff's defamation claim; a mutually acceptable alternate arbitrator will be chosen; and

(4) This matter is stayed until the conclusion of the arbitration by written decision of the arbitrator. The Parties are to notify the Court within 10 days of the decision. The Parties will also advise the Court every 180 days of the state of the arbitration.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 27, 2019.

Marsha J. Pechman
United States District Judge